UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

Joseph M.,[1]

        Plaintiff,

  v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

23-CV-0369-LJV
DECISION & ORDER

———————————————————————

On April 27, 2023, the plaintiff, Joseph M. ("Joseph"), brought this action under the Social Security Act ("the Act").  Docket Item 1.  He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled.[2]  *Id.*  On July 26, 2023, Joseph moved for judgment on the pleadings, Docket Item 9-1; on August 25, 2023, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 10-1; and on September 5, 2023, Joseph replied, Docket Item 11.

———

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial.  Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Joseph applied for Disability Insurance Benefits ("DIB"), which includes any adult with a disability who, based on his quarters of qualifying work, meets the Act's insured-status requirements.  *See* 42 U.S.C. § 423(c); *Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989).

For the reasons that follow, this Court denies Joseph's motion and grants the Commissioner's cross-motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

2

more than one rational interpretation, the Commissioner's conclusion must be upheld."). But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

I.   THE ALJ'S DECISION

On January 16, 2023, the ALJ found that Joseph had not been under a disability "from November 21, 2017, the alleged onset date, through December 31, 2021, the date last insured."[4]  *See* Docket Item 4 at 329.  The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. §§ 404.1520(a), and 416.920(a). *See id.*

At step one, the ALJ found that Joseph had not engaged in substantial gainful activity from the alleged onset date through the date last insured.  *See* Docket Item 4 at 310.  At step two, the ALJ found that Joseph suffered from several severe, medically

---

[4] This was the second ALJ decision in this case.  On March 5, 2021, United States District Judge Charles J. Siragusa remanded Joseph's case for several reasons. First, Judge Siragusa found that in the earlier decision, the ALJ had erred by not adequately considering the opinions of William Reynolds, Ph.D.  Docket Item 4 at 547-549.  Second, Judge Siragusa determined that the ALJ had "erred in his analysis of" the mental impairment questionnaire from Kathleen Vertino, M.D.  *Id.* at 549-551.  Finally, Judge Siragusa found that the ALJ had erred in relying on the medical opinions of Ronald Stilwell, RN, and John Czajkowski, PA.  *Id.* at 551.  In addition, Judge Siragusa directed "the Commissioner [to] consider the ALJ's analysis at step two" with respect to sleep apnea.  *Id.* at 552.  The ALJ's decision dated January 16, 2023, was issued after that remand.  *Id.* at 329.

3

determinable impairments: "[a]nxiety, depression, posttraumatic stress disorder (PTSD), asthma, right shoulder supraspinatus tear, and right knee meniscectomy." *Id.*

At step three, the ALJ found that Joseph's severe, medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* Docket Item 4 at 311-314. More specifically, the ALJ found that Joseph's physical impairments did not meet or medically equal listing 1.18 (abnormality of a major joint in any extremity), *id.* at 331, or 3.03 (asthma), *id.* at 312. Likewise, the ALJ found that Joseph's mental impairments did not meet or medically equal listing 12.04, 12.06, or 12.15 (depressive, bipolar, or related disorders). *See id.* at 312. In assessing Joseph's mental impairments, the ALJ found that Joseph was: (1) mildly impaired in understanding, remembering, or applying information; (2) moderately impaired in interacting with others; (3) moderately impaired in concentrating, persisting, or maintaining pace; and (4) moderately impaired in adapting or managing himself. *See id.* at 312-313.

The ALJ then found that during the relevant time period, Joseph had the residual functional capacity ("RFC")[5] to "perform light work as defined in 20 C.F.R. [§] 404.1567(b) except" that

---

[5] A claimant's RFC is the most "an individual can still do despite his or her limitations . . . in an ordinary work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*; *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

4

> [Joseph could have] lift[ed] and carr[ied] 20 pounds occasionally, lift[ed] and carr[ied] 10 pounds frequently, and s[a]t, st[oo]d, and walk[ed] 6 hours out of an 8-hour workday.  [He] would have been limited to work environments that had no more than a moderate level of noise, as the term "moderate" is defined in the Selected Characteristics of Occupations, an appendix to the Dictionary of Occupational Titles.  He would have been limited to no more than occasional exposure to irritants such as odors, fumes, dusts, gasses and poor ventilation, and no direct exposure to bright or flashing lights.  [He] would have been limited to environments in which there was no exposure to hazards such as unprotected heights or moving machinery.  Additionally, [he] would have been limited to occasional climbing of ramps and stairs, no climbing of ladders[,] ropes[,] or scaffolds, occasional kneeling, occasional crouching, and no crawling.  [He] would have been limited to reaching in any direction no more than two thirds of a workday.  He would have been limited to environments in which there was no exposure to excessive moisture or humidity, and no exposure to excessive vibration.  [He] would have been limited to work that required no more than simple, routine tasks that could be learned after a short demonstration or within 30 days.  He would have been limited to work that did not require more than simple work-related decisions[,] work that did not require driving a vehicle, work that did not require travel to unfamiliar places, and work in which the individual would not have been required to independently develop work strategies or identify workplace needs.  Additionally, he would have been limited to no more than superficial interaction with the public, and up to occasional interaction with coworkers.  [He] would have been limited to work that did not require teamwork, such as on a production line, work that required doing the same tasks every day with little variation in location hours, or tasks, and work that was subject to no more than occasional supervision.  He would have been off-task to 5 percent of the workday in addition to regularly scheduled breaks.

Docket Item 4 at 314.

At step four, the ALJ found that Joseph no longer could have performed any past relevant work.  *See id.* at 327-28.  But given Joseph's age, education, and RFC, the ALJ found at step five that Joseph could have performed substantial gainful activity as a garment sorter, marker, classifier, bagger (garment), checker I, and linen grader.  *See id.* at 329; *see also Dictionary of Occupational Titles* 222.687-014, 1991 WL 672131

(Jan. 1, 2016); *id.* at 209.587-034, 1991 WL 671802 (Jan. 1, 2016); *id.* at 301.687-010, 1991 WL 672653 (Jan. 1, 2016); *id.* at 361.687-014, 1991 WL 672991 (Jan. 1, 2016); *id.* at 920.687-018, 1991 WL 687965 (Jan. 1, 2016); *id.* at 222.687-010, 1991 WL 672130 (Jan. 1, 2016); *id.* at 361.687-022, 1991 WL 672993 (Jan. 1, 2016).  Therefore, the ALJ found that Joseph had not been entitled to DIB from November 21, 2017, through December 31, 2021.  See Docket Item 4 at 329.

## II.   ALLEGATIONS

Joseph argues that the ALJ erred in two ways.  Docket Item 9-1 at 1.  First, he argues that the ALJ erred by finding persuasive several opinions suggesting that Joseph was limited in interacting with supervisors but not limiting interaction with supervisors in the RFC.  *Id.* at 24-27.  Second, he argues that the ALJ relied on a stale opinion, resulting in an RFC determination unsupported by substantial evidence.  *Id.* at 27-34.  For the reasons that follow, this Court disagrees.

## III.  ANALYSIS

### A. THE RFC LIMITED JOSEPH TO WORK WITH NO MORE THAN OCCASIONAL SUPERVISION.

Joseph argues that despite finding persuasive the opinions of Linda Miller, D.O., Stephen Farmer, Psy.D., and Christine Ransom, Ph.D., the ALJ "fail[ed] to incorporate" limitations in those opinions into the RFC.  *Id.* at 24.  More specifically, he argues that the ALJ did not "even consider the specific limitations" in those opinions with respect to "interacting with supervisors."  *Id.*

At the hearing, Dr. Miller testified that Joseph "probably should be limited to working with small groups of people."  See Docket Item 4 at 409.  Dr. Farmer and Dr.

6

Ransom likewise opined that Josph had moderate limitations in interacting adequately with supervisors, coworkers, and the public. See Docket Item 3 at 346; Docket Item 4 at 1135. And the ALJ found that Joseph was indeed moderately limited in interacting with others. See id. at 312.

Joseph asserts that the "ALJ completely ignored the opinions in regards to [sic] [his] ability to interact with supervisors[,]" see Docket Item 9-1 at 24, but that is simply incorrect. On the contrary, the RFC limited Joseph to "work that was subject to no more than occasional supervision." See Docket Item 4 at 314. Likewise, the RFC limited him to only "superficial interaction with the public[] and up to occasional interaction with coworkers," as well as "work that did not require teamwork." See id.

Contrary to Joseph's argument, those limitations were indeed consistent with the opinions of Drs. Ransom, Farmer, and Miller. Rachel D. v. Comm'r of Soc. Sec., 537 F. Supp.3d 389, 901 (W.D.N.Y. 2021) ("RFC's limiting [p]laintiff to only occasional interaction with supervisors, co-workers, and the public accounts for Dr. Fabiano's opinion relating to [p]laintiff's ability to interact with others, including that she had moderate limitations for interacting adequately with supervisors, co-workers, and the public.") (citing Laughlan v. Comm'r of Soc. Sec., 2019 WL 2723417, at *2 (W.D.N.Y. Jul. 1, 2019) ("occasional contact with co-workers and supervisors is properly rated as a moderate limitation in social functioning"); Gomez v. Comm'r of Soc. Sec., 2020 WL 1322565, at *3 (W.D.N.Y. Mar. 20, 2020) (ALJ incorporated moderate limitation in ability to interact appropriately with supervisors by limiting plaintiff to occasional interaction with supervisors); Reily v. Colvin, 2015 WL 6674955, at *3 (W.D.N.Y. Nov. 2, 2015)

7

(restriction to occasional contact was sufficient to account for moderate limitations). Joseph's first argument therefore lacks merit.

### B. THE RFC WAS SUPPORTED BY SUBSTANTIAL EVIDENCE THAT WAS NOT STALE.

Joseph also argues that the ALJ erred in relying on the opinions of Steven V. Mawn, M.D., "because they were offered prior to [Joseph's] alleged onset date and rendered stale by [his] subsequent deterioration." Docket Item 9-1 at 28. The ALJ found Dr. Mawn's September 2017 opinion "persuasive in the fact that this source only temporarily restricted [Joseph] to light duty work . . . given his persisting low back pain after strain." Docket Item 4 at 325 (citing Docket Item 3 at 317). Likewise, the ALJ found Dr. Mawn's "October 2017 opinion persuasive and warranting great consideration given [that] this source provided thorough findings showing [Joseph's] low back pain or strain improved and only warranted a mild treatment regimen." *Id.* (citing Docket Item 3 at 327).

But on July 25, 2020, almost three years after Dr. Mawn rendered his opinions, Joseph was struck by a car while riding his bike through a crosswalk and taken to the emergency room. Docket Item 4 at 938. At the hospital, he complained of pain in his right knee, foot, and ankle, and in his left shoulder. *Id.* X-rays revealed no evidence of fractures, but treatment notes indicated a "low suspicion for bony injury." *Id.* at 940. And as soon became apparent, Joseph's injuries were indeed significant.

"A gap of time between when an opinion is rendered and the disability hearing and decision does not automatically invalidate that opinion; however, such an opinion may be stale if the claimant's condition deteriorates during that time." *Majdandzic v. Comm'r of Soc. Sec.,* 2018 WL 5112273, at *3 (W.D.N.Y. Oct. 19, 2018) (citing *Welsh v.*

8

*Colvin,* 2016 WL 836081, at *12 (W.D.N.Y. Mar. 4, 2016) (finding that opinion rendered before the "significant deterioration" of claimant's mental status could not "constitute substantial evidence supporting the ALJ's determination"). In other words, although the "mere passage of time does not render an opinion stale," *Whitehurst v. Berryhill,* 2018 WL 3868721, at *4-5 (W.D.N.Y. Aug. 14, 2018), "significant developments" in an individual's medical history after the examination might, *Davis v. Berryhill,* 2018 WL 1250019, at *3 (W.D.N.Y. Mar. 11, 2018).

From late 2017 when Dr. Mawn rendered his opinions through July 2020 when Joseph was injured in the accident, Dr. Mawn's opinions were not stale. So those opinions can and do support the RFC finding from Joseph's alleged onset date—November 21, 2017—through July 2020. But by the time the ALJ rendered his decision in January 2023, significant medical events had occurred about which Dr. Mawn could not possibly have opined. So the first question is whether those significant medical events resulted in the material deterioration of Joseph's physical health for the period between July 2020 and Joseph's date last insured, December 31, 2021. And the answer is that they did.

Treatment notes from Pinnacle Orthopedic & Spine Specialists indicate that Joseph's physical condition deteriorated significantly after Dr. Mawn's opinions were rendered. Docket Item 4 at 1030-1118. For example, office notes from October 22, 2020, found that "the trauma of [Joseph's] motor vehicle accident has produced significant injur(ies) rendering [him] to be symptomatic and requir[ing]" medical treatment. *Id.* at 1092. In fact, and as noted by the ALJ, *id.* at 319, Joseph's accident caused a right knee injury that was not amenable to conservative treatment, and on

March 18, 2021, Joseph underwent surgery on his right knee, *id.* at 1005.  About a month later, on April 12, 2021, Joseph also had surgery on his right shoulder, which revealed a "significant traumatic injury" to his rotator cuff and subacromial space, as well as "significant disruption of the inferior AC ligament."  *Id.* at 1112, Docket Item 5 at 87-91.  And office notes from April 27, 2021, indicate that Joseph had five accident-related injuries specific to his right shoulder.  Docket Item 4 at 1030-1031.  Taken together, all those records show that Dr. Mawn's opinion was indeed stale by the time the ALJ rendered his decision.

The Commissioner argues that "the record does not show significant deterioration" between the time Dr. Mawn's opinions were rendered and Joseph's date last insured, Docket Item 10-1 at 16-17, but even the medical evidence after the accident-related surgeries belies that argument.  For example, on August 2, 2021, Joseph was evaluated by Graham Huckell, M.D., and reported his pain as between seven and eight (with ten being the worst), running from his back into the thigh and all the way down to his foot.  Docket Item 4 at 1164.  The pain was "worse with walking [and] negotiating stairs," *id*., and on September 27, 2021, Joseph characterized his pain as aching and stabbing and rated his pain as nine out of ten, Docket Item 5 at 1684.  The MRI of Joseph's left knee done on September 15, 2021, evidenced an "apparent non-displaced oblique tear of the posterior horn of the medical meniscus which appears to extend to the inferior articular surface posteriorly."  Docket Item 4 at 1152.

In sum, the objective medical evidence, including the surgeries and post-surgical evaluations, demonstrate that Joseph's knee and shoulder were injured significantly

after Dr. Mawn rendered his opinions.  And that alone made Dr. Mawn's evaluations stale for the period after the accident through the date last insured.

Because Dr. Mawn's opinions were stale for the period after Joseph's July 2020 accident, they cannot provide substantial evidence supporting the determination that Joseph could "sit, stand, and walk [for six] hours out of an [eight]-hour workday"; occasionally kneel, crouch, and climb ramps and stairs; or do anything else that might involve the knee that was injured in the accident.  *See id.* at 314.  Likewise, they cannot support findings about Joseph's ability to lift, carry, or do anything else involving his injured shoulder.  *See id.*  In other words, the opinions are stale from July 25, 2020, the date of Joseph's accident, through December 31, 2021, the date last insured.  The RFC for that time period therefore survives judicial scrutiny only if it is supported by other evidence.

An ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order); *accord Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022).  As long as the ALJ considers all the medical evidence and appropriately analyzes the medical opinions, an RFC consistent with the record is not error.  *See* 20 C.F.R. §§ 404.1545, 416.945; *see also Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (holding that remand is not necessary "[w]here an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence").  And here, the ALJ had ample support for the post-accident RFC.

Stephen Geneve, M.D., a physical medical expert, reviewed Joseph's medical history and testified at the hearing on November 23, 2021.  Docket Item 4 at 428-444.  Dr. Geneve opined that Joseph could sit for six hours and stand and walk for a combination of two hours; frequently lift less than ten pounds and reach overhead with his right arm; occasionally lift ten pounds; frequently climb ramps and stairs, balance, and stoop; occasionally climb ladders, kneel, crouch, and crawl; occasionally have exposure to unprotected heights; have no exposure to pulmonary irritants or extreme temperatures; and have moderate noise exposure.  *Id.* at 431-439.  The ALJ found Dr. Geneve's hearing testimony to be "somewhat persuasive."  Docket Item 4 at 324.  The ALJ noted that "Dr. Geneve's opinion was supported by his review of the record[,]" but discounted his opinion insofar as "it was not consistent with the medical record which revealed [that] after his surgery, [Joseph] stated his right shoulder pain was improving." *Id.* at 324 (citing *id.* at 1159).  And with respect to the period after Joseph's accident, the RFC is largely consistent with, or more restrictive than, Dr. Geneve's opinion.

For example, Dr. Geneve opined that Joseph could frequently climb ramps and stairs, and occasionally climb ladders, kneel, crouch, and crawl, *id.* at 437-438; the RFC limited Joseph to occasionally climbing ramps and stairs, kneeling, and crouching, and never climbing ladders, rope, scaffolds, or crawling.  *Id.* at 314.  The RFC limited Joseph to no exposure to unprotected heights, *id.,* while Dr. Geneve limited him to occasional exposure to unprotected heights.  *Id.* at 438.  Finally, the RFC limited Joseph

to "reaching in any direction no more than two thirds of a workday[,]" *id.* at 314, while Dr. Geneve found he was able to frequently reach. *Id.* at 437.[6]

The opinions of non-examining medical consultants, such as Dr. Geneve, may constitute substantial evidence. *See Maleski v. Comm'r of Soc. Sec.,* 2020 WL 210064, at *4 (W.D.N.Y. Jan. 14, 2020) ("It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability[;] . . .. The opinion of a non-examining source may override that of an examining source, even a treating source, provided the opinion is supported by evidence in the record."); *Byrne v. Berryhill,* 284 F. Supp.3d 250, 260 (E.D.N.Y. 2018) ("[n]on-examining medical consultants, such as Dr. Fuchs, may provide opinions, which constitute substantial evidence"); *Ortiz v. Comm'r of Soc. Sec.,* 309 F. Supp.3d 189,

---

[6] To the extent that the RFC was not as restrictive as Dr. Geneve opined—for example, finding that Joseph could "lift and carry [twenty] pounds occasionally . . . [and ten] pounds frequently," *see* Docket Item 4 at 314, as opposed to ten pounds occasionally and "[l]ess than ten . . . maybe five" frequently, see *id.* at 431—those relatively minor inconsistencies were supported by Joseph's own reports as well as other opinion evidence. For example, in July 2022, long after his accident and surgeries, Joseph visited an emergency room and reported injuring himself while unloading a trailer. *See* Docket Item 5 at 1819; *see also* Docket Item 4 at 320 (ALJ decision citing emergency room record). Moreover, two physicians who examined Joseph after his accident and surgeries opined that he could lift up to fifty pounds occasionally and ten to twenty frequently. *See* Docket Item 4 at 1124; *see also id.* at 1026. Although the ALJ found these opinions unpersuasive, *see id.* at 325-26, that does not mean that he rejected them entirely. *Deborah W. v. Saul,* 2021 WL 1226485, at *4 (W.D.N.Y. Mar. 30, 2021) ("[T]he ALJ acted within his authority in relying on a portion of Dr. Ippolito's findings while rejecting those portions of the consultative psychologist's assessment that are contradicted by the psychological examination.") (citing *Veino v. Barnhart,* 312 F.3d 578, 588 (2d Cir. 2002 (it was within the province of the ALJ to resolve contradictions between the consultative examinations findings and the consultative examiner's conclusions))). And they provide additional support for any discrepancy between the limitations in Dr. Geneve's opinion about lifting and carrying and the limitations in the RFC.

13

2015 (S.D.N.Y. 2018) ("[u]nder the regulations, the ALJ was permitted to consider the opinion [of the non-examining physician] in making a disability determination[;] . . . [m]oreover, the opinion of a non-examining expert . . . may be considered substantial evidence if consistent with the record as a whole").  And while some courts have found that the opinion of a non-examining physician *alone* is insufficient to constitute sufficient evidence, *see D'augustino v. Colvin,* 2016 WL 5081321, at *2 (W.D.N.Y. Sep. 16, 2016) ("even where a non[-]examining opinion is afforded weight, *it alone* cannot be considered substantial evidence") (citations omitted), the RFC here was based on more than that, including Joseph's subjective complaints, his activities of daily living, and the medical records documenting Joseph's improvement after his surgery.  *See* Docket Item 4 at 315-327; *see also Majdanzic,* 2018 WL 5112273, at *6 ("the ALJ did not rely on [the non-examining physician's opinion] as sole support for her RFC determination[;] . . . the ALJ also . . . considered the medical evidence and [the claimant's] testimony and credibility").

For example, in explaining the RFC limitations related to Joseph's right knee, the ALJ noted that "after his right knee surgery, [Joseph] had only mild tenderness and was told to perform his exercise on the right knee on an as needed basis."  *Id.* (citing *id.* at 1167).  In discussing Joseph's left knee, the ALJ found that he "was prescribed physical therapy and told to modify his activities as needed."  *Id.* (citing *id.* at 1151, 1156).  In discussing both knees, the ALJ noted that "there was an absence in the record of the need for invasive treatment modalities or exacerbations requiring overnight hospitalization" and that Joseph "often had normal gait, normal sensation, and normal

14

motor." *Id.,* (citing *id.* at 1151, 1156; Docket Item 5 at 1643, 1651, 1668, 1893, 1950, 1955).

Indeed, multiple treatment notes in the record reflect that Joseph was not in acute distress and had a normal gait. Docket Item 4 at 927, 930, 933, 1042, 1059-1060, 1065, 1076, 1085, 1096, 1101, 1151, 1156, 1176, 1181; Docket Item 5 at 392, 562, 613, 666, 675-676, 842, 852, 941-942, 1006-1007, 1030, 1093, 1229, 1377, 1380, 1456, 1540, 1643, 1651, 1657, 1663, 1668, 1684, 1821, 1893, 1946, 1950, 1964, 1979, 1987, 1993, 1998, 2020, 2030, 2038, 2052; *see also Jeffrey M. v. Comm'r of Soc. Sec.,* 2020 WL 3637646, at *9-10 (N.D.N.Y. Jul. 6, 2020) (holding that medical notes showing that the claimant was in no acute distress, had a normal gait, and did not need assistance getting on and off the exam table all supported the ALJ's assessment that claimant was able to walk and move consistent with light work). So the RFC was based not only by Dr. Geneve's opinion but by other medical records as well.

The ALJ also relied on Joseph's reported activities of daily living to determine he could perform light work.[7] Docket Item 4 at 315, 320. For example, the ALJ noted that Joseph performed household chores, shopped, and could dress and bathe himself, activities that the ALJ found "inconsistent with [Joseph's] previous statements that he had difficulty with lifting, bending, reaching, [and] sitting." *Id.* at 315; s*ee Rusin v. Berryhill,* 726 F. App'x 837, 840 (2d Cir. 2018) (an ALJ is entitled to consider inconsistencies between a claimant's allegations and his activities of daily living). The ALJ also found that Joseph's "ability to drive shows the ability to . . . use hand and foot

---

[7] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b); 416.967(b).

controls, an ability to turn one's head to consult mirrors, . . . and to sit for [a] continuous period of time. It further demonstrates the ability to bend and stoop to get into and out of a car." Docket Item 4 at 315. In addition, the ALJ noted that Joseph "reported being able to unload a trailer and working full time." *Id.* at 320 (citing Docket Item 5 at 1819).

Courts have found that the ability to do routine daily activities, like those that Joseph can perform, support a finding of being able to do light work. *See Christopher H. v. Comm'r of Soc. Sec.,* 2022 WL 2109180, at *9 (W.D.N.Y. Jun. 10, 2022) ("[S]ubstantial evidence of record, including [p]laintiff's robust activities of daily living, the medical evidence including mild diagnostic findings, and the opinions of record assessing that [p]laintiff could engage in light level work, support the ALJ's RFC finding."); *see also Cichocki v. Astrue,* 566 F.3d 172, 178 (2d Cir. 2013) (holding that ALJ properly considered claimant's reported daily activities, such as walking dog and cleaning house, in support of RFC finding for light work); *Poupore v. Astrue,* 566 F.3d 303, 307 (2d Cir. 2009) (claimant's varied activities, including occasional vacuuming, washing dishes, driving, and watching television supported RFC finding for light work); *see Ortiz v. Saul,* 2020 WL 1150213, at *1 (S.D.N.Y. Mar. 10, 2020) ("Plaintiff's ability to perform a range of light chores, including cooking, shopping, cleaning, and laundry . . . support[s] a light work RFC finding.").

In sum, while this Court agrees with Joseph that Dr. Mawn's opinion was stale for the period between Joseph's accident and the date last insured, that opinion supported the RFC for the time before the accident. And for the period after the accident, the RFC was supported by Dr. Geneve's opinion as well as other evidence in the record. This Court may not "decide the facts anew, reweigh the evidence, or substitute its own

16

judgment for that of an [ALJ]." *Fanton v. Astrue,* 2011 WL 282383, at *2 (W.D.N.Y. Jan. 11, 2011) (quoting *Delgado v. Bowen,* 782 F.2d 79, 82 (7th Cir. 1986)).  So even if this Court might disagree with the ALJ's conclusion, it must affirm so long as the conclusion is supported by substantial evidence.  *See* 42 U.S.C. § 405(g).  And for the reasons noted above, it is.

**CONCLUSION**

The ALJ's decision was not contrary to the substantial evidence in the record, nor did it result from any legal error. Therefore, and for the reasons stated above, Joseph's motion for judgment on the pleadings, Docket Item 9-1, is DENIED, and the Commissioner's cross-motion for judgment on the pleadings, Docket Item 10-1, is GRANTED. The complaint is DISMISSED, and the Clerk of Court shall close the file.

SO ORDERED.

Dated:   December 30, 2024
         Buffalo, New York

                                        _Lawrence J. Vilardo_
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE